STATE, *ex rel.* FIVE TRANSPORTATION COMPANY, v. J. M. LEE, as Comptroller.

181 So. 179.
Division A.
Opinion Filed January 5, 1938.
Supplemental Opinion Filed April 28, 1938.

184

Stanton Walker, for Relators;

Cary D. Landis, Attorney General, and Theo T. Turnbull and W. P. Simmons, Jr., for Respondent.

BUFORD, J.—This is an original proceeding in mandamus, the purpose of which is to have this Court construe the provisions of Section 3 of Chapter 18026, Acts of 1937, amending Section 16 of Chapter 14764, Acts of 1931, wherein it is provided:

"That there shall be collected by the Comptroller of the State of Florida from every auto transportation company as herein defined to which has been granted a certificate of public convenience and necessity or a permit authorizing it to engage in the transportation of passengers or freight, or both, * * * mileage tax of one cent (1 cent) per mile on all trucks or trailers with a factory rated load capacity of less than 5,500 pounds, and tax of two cents (2 cents) per mile on all trucks or trailers with a factory rated load capacity of 5,500 pounds or more coming within the terms of this Act for every mile traveled for compensation by the motor vehicles of such auto transportation company over the public highways of this State."

It is contended by the Relators that the language "for every mile traveled for compensation" means that the mileage tax is to be collected only for the miles traveled by a truck while actually transporting goods, wares or merchandise and that when the truck is traveling on the highway in the business of transportation of freight for hire, but at the time of running empty no mileage tax is chargeable against it.

The command of the writ is addressed to the Comptroller and is in the following language:

"Now, THEREFORE, we being willing that full and speedy justice be done in the premises, do command you, J. M. Lee, as Comptroller of the State of Florida, to immediately accept the sums tendered by the Petitioners in payment of mileage taxes for every mile traveled for compensation by the motor vehicles of such Petitioners over the public highways of this State in full settlement for such mileage tax without taking into account or attempting to assess or compel payment of any mileage tax on miles traveled by the motor vehicles of the Petitioners on empty trucks in which no pay load or any load whatsoever is carried, or that in default thereof, you do appear before this Court at the Courtroom on the 4th day of October, A. D. 1937, and show cause why you refuse so to do and have you then and there this Writ."

The Respondent filed motion to quash and also filed return and the Relator has filed demurrer to the return and motion for peremptory writ, notwithstanding the return.

Section 1 of Chapter 14764, *supra,* defines words and terms used in the Act. Sub-paragraph (h) thereof defines the term "auto-transportation Company," as follows:

"(h) The term 'Auto Transportation Comany' when used in this Act means every corporation or person, their lessees, trustees or receivers,, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over fixed rails, used in the business of transporting persons or property for compensation over any public highway in this State and shall specifically mean and include:

"1. Every such person or corporation owning, leasing, using or exercising dominion over motor vehicles, operated in common carriage of either persons or property for com-

pensation over public highways over regular routes or on fixed schedules or between fixed termini.

"2. Every such person or corporation owning, leasing, using or exercising dominion over motor vehicles operated in the transportation of persons or property over public highways under contract or private carriage for compensation.

"3. Every person or corporation owning, leasing, using or exercising dominion over motor vehicles operated in the transportation of persons or property over public highways for hire, as defined in Section 1280, Compiled General Laws of 1927."

The alternative writ admits that the Respondent is an auto transportation company and that it is operating trucks in the business of transporting personal property for compensation over the public highways of this State. It, therefore, follows that when such trucks are being operated over the public highways of the State of Florida in the business conducted by an "auto transportation company" under a permit required by the legislative Acts, *supra,* such truck is being operated for compensation. The auto transportation companies operate under rates fixed by the Railroad Commission and in fixing the rates the Railroad Commission must necessarily take into consideration the fact and the condition that in maintaining the schedules at the rates fixed trucks must often travel long distances, long or short as circumstances may require, without a pay load and that, therefore, allowance in compensation must be made for the expense incident to such condition. So we hold that when the truck operated by an auto transportation company over routes upon schedules and supplying rates approved and fixed by the Railroad Commission that such trucks are used in the business of transportation for compensation whether they carry full load, part load or no load in the making of

such schedules over such routes for the purpose of transporting property for compensation.

We discussed in detail the purpose of Chapter 14764, Acts of 1931, in the case of Riley v. Lawson, 196 Fla. 521, 143 Sou. 619, and, amongst other things, we said that the purpose of the Act is "to exact compensatory taxes from those using public highways for private profit based on the actual mileage involved, the tax being dedicated to construction, maintenance and upkeep of the State's highway system." But the Relator contends that the Legislature meant to relieve it from the mileage tax on its trucks engaged in auto transportation of property when such trucks did not at the time carry any part of a load.

We cannot agree with this contention. The mileage tax, it will be observed, is not based on the load carried, but is based upon the factory rated load with a factory rated load capacity of less than 5,500 pounds and pays no more mileage tax while carrying 10,000 pounds than it does when carrying 10 pounds.

The case of State v. Public Service Commission of Wisconsin, 207 Wis. 664, 242 N. W. 668, construing a statute somewhat like the one here under consideration the Court said:

"As to 'freight vehicles,' it is provided that 'the licensed capacity of each motor vehicle, trailer, and semi-trailer in pounds, shall be added to the weight of the motor vehicle trailer, or semi-trailer in pounds.' Section 76.54 (3). This sum shall be multiplied by the number of miles the vehicle is operated and the amount thus obtained divided by two thousand. It is contended that the phrase 'freight carrying motor vehicles' must mean vehicles carrying freight and that in order to be subject to the tax they must be carrying freight; consequently they are not subject to the tax when they are running empty. It will be noted that even this

contention assumes that the trucks are taxed at full capacity if they are carrying any freight at all. The contention is that they are not freight carrying vehicles when they are running empty and, consequently, not subject to the tax. However, it is plain that the phrase 'freight carrying motor vehicles' as there used, has no such significance. It is simply used for the purpose of distinguishing them from passenger busses. There can be no doubt that the Legislature intended to impose the tax upon freight carrying vehicles while running empty as is plainly provided with reference to busses while running empty.

In the statute there construed the language was "freight carrying vehicles." Here the language is "for every mile traveled for compensation by motor vehicles," etc.

In the case of Cahoon v. Smith, 99 Fla. 1174, 128 Sou. 632, we held:

"The mileage tax levied by the statute is a license tax imposed upon the intrastate business of transportation for compensation on the public roads of the State."

This case was decided before the amendment to Chapter 14764, Acts of 1931, and it is significant that we used the words, "transportation for compensation," in the opinion in that case. Therefore, we construed the statute as it then stood just as if it had been written in the language of the amendment.

It is contended by the Relator that we must give the statute the construction suggested because we must assume that the Legislature meant to make some change in the meaning of the statute when the amendatory language was inserted. This does not follow because the amendment was adopted in the light of the controlling decision of the Supreme Court in the case of Cahoon v. Smith, *supra*. But if we concede that the language was used in the statute for the purpose of exempting certain trucks owned and run

over the highways by auto transportation companies we may assume that the exemption was intended to cover trucks in transit belonging to an auto transportation company, but not used in its auto transportation business. For instance, an auto transportation company operating in Florida might buy a fleet of trucks and have them driven over the highways of Florida to one of the termini of the auto transportation company for the purpose of being put into operation in the business of the company; and in such case might be, under the terms of this Act, exempt from the mileage tax on such trucks; or it might be that an auto transportation company would have one or more trucks at a terminus where the auto transportation company had no use for such truck or trucks in its business and might need that truck in the operation of its business from some other terminus. In such case it may be that it was intended by this language to exempt the auto transportation company from the mileage tax when transferring that truck, not on a schedule and not in its transportation business, from one terminus to another for the purpose of putting it into operation at such other terminus.

The motion to quash the alternative writ should be granted and it is so ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.

## SUPPLEMENTAL OPINION.

PER CURIAM.—A demurrer to the answer and return of the respondent herein being on file when the last order herein was entered, it is now considered and ordered that the order quashing the alternative writ is vacated and the demurrer to the answer and return is overruled, and the relator is allowed twenty days in which to join issue on the

answer and return of the respondent, or to further plead if so desired.

It is so ordered.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.